UNITED STEELWORKERS OF AMERICA, AFL–CIO, and James Garry, Quinto Delissio, Patrick McGhen and Ernest A. Oblack on behalf of themselves and others similarly situated, Plaintiffs,

v.

FORT PITT STEEL CASTING, DIVISION OF CONVAL–PENN, INC., DIVISION OF CONVAL CORPORATION, Defendant.

### Civ. A. No. 78–601.

United States District Court, W. D. Pennsylvania.

June 23, 1978.

---

Frank J. Lucchino, Rudolph L. Milasich, Jr., Pittsburgh, Pa., for plaintiffs.

Henry J. Wallace, Jr., Pittsburgh, Pa., for defendants.

## OPINION

ZIEGLER, District Judge.

### I. *History of Case*

Plaintiffs, United Steelworkers of America, and others, instituted an equity action seeking injunctive relief in the Court of Common Pleas of Allegheny County, Pennsylvania, against defendant, Fort Pitt Steel Casting, Division of Conval-Penn, Inc., Division of Conval Corporation. The state court enjoined defendant "from doing any act which would terminate hospital and insurance policies in effect" on May 30, 1978. Fort Pitt filed a Petition for Removal of the action to this court, and a Motion to Dissolve Preliminary Injunction. The removal petition was granted, and the accompanying motion was withdrawn on June 7, 1978.[1]

Plaintiffs then filed a Motion for Preliminary Injunction in this court, and a hearing was conducted on June 7, 1978, as required by Rule 65 of the Federal Rules of Civil Procedure. The district court entered a preliminary injunction enjoining Fort Pitt from:

"Failing to advance and to pay, in a timely manner, the premiums necessary to keep the plaintiffs' class members' hospital and insurance policies in effect."

Defendant then filed a Motion to Dissolve Preliminary Injunction and a hearing was conducted on June 15, 1978. Fort Pitt contends the district court is without jurisdiction to enjoin the conduct of defendant due to the provision of the Norris-LaGuardia Act,[2] and the decision of *Buffalo Forge Co. v. United Steelworkers of America,* 428 U.S. 397, 96 S.Ct. 3141, 49 L.Ed.2d 1022 (1976). While we disagree with defendant's interpretation of our jurisdictional prerequisites, we will amend the order and require defendant to submit the alleged grievance to the grievance-arbitration provisions of the collective-bargaining agreement. Further, in order to preserve the status quo pending resolution of the dispute, we will restrain defendant from initiating any act which is designed to interdict the hospital and insurance benefits of those persons on whose behalf this action was instituted.

### II. *Findings of Fact*

United Steelworkers of America, and its Local Union No. 1406, are the exclusive bargaining representatives for approximately 350 employees at defendant's plant in McKeesport, Pennsylvania. The parties are signatories to a three-year collective bargaining agreement dated March 3, 1975. The contract contains a broad no-strike clause[3] and an extensive grievance-arbitration procedure.[4] Both parties are accorded the right to invoke arbitration[5] relative to "any request or complaint."[6] The parties have also bargained that the arbitrator shall have "authority to interpret, apply and determine compliance with the provisions of this agreement."[7]

Defendant's right to file a grievance, which is set forth in Paragraph (97), provides in part: "The grievance procedure may be utilized by the company in processing company grievances . . .." The use of the word "may" does not render the arbitration permissive, but rather gives the "aggrieved party the choice between arbi-

---

1. The state court injunction dissolved for want of a final hearing after the expiration of five days pursuant to Rule 1531(d) of the Pennsylvania Rules of Civil Procedure. 42 Pa.C.S.A. § 1531(d).

2. 29 U.S.C. § 185(a) (1970).

3. Agreement between Fort Pitt Steel Casting Division-Conval Penn, Inc., Division of Conval Corporation and United Steelworkers of America, AFL–CIO, Local Union 1406, Section 9(E), pp. 42–43, Paragraph (101).

4. *Id.* at pp. 36–43, Paragraphs (88–102).

5. *Id.* at pp. 41–42, Paragraphs (91 and 102).

6. *Id.* at p. 36, Paragraph (88).

7. *Id.* at p. 42, Paragraph (99).

tration or abandonment of its claim." *Bonnot v. Congress of Independent Unions, Local 14*, 331 F.2d 355, 359 (8th Cir. 1964). Similarly, the Court of Appeals for the Third Circuit has held that a contract which provides that "either party may invoke the grievance procedure . . . " is mandatory in character. *Yale & Town Mfg. Co. v. Local Lodge 1717, Machinists*, 299 F.2d 882, 883 (3d Cir. 1962).

The contract expired on March 2, 1978, and Local Union No. 1406 commenced a lawful work stoppage. The parties initiated good faith bargaining in an effort to negotiate a new contract. While the discussions were extant, James P. Spresser, Vice President and General Manager of defendant, notified plaintiffs that Fort Pitt intended to suspend the payment of hospitalization and insurance premiums for plaintiffs' members on June 1, 1978. Defendant alleged in writing that, although it agreed to pay the premiums during the work stoppage, unless plaintiffs agreed at this time to the method of reimbursement, payment of the premiums would be discontinued.[8] Plaintiffs declined the gambit due to the language of Section 19 of the collective-bargaining agreement.

Section 19 provides as follows:

"The parties agree that in the event of a labor dispute at the end of termination of this Agreement, the Company will continue hospitalization and insurance benefits. At the end of said dispute, the Company will be reimbursed for payments made on behalf of the employees in payment methods mutually agreed on by the parties."

Plaintiffs contend the language of this section requires defendant to pay all insurance and hospitalization premiums during any labor dispute at the termination of the agreement, and the question of reimbursement does not arise until the end of the strike. Therefore, plaintiffs conclude the threatened cancellation of collateral benefits constitutes a breach of the contract,

and an immediate and irreparable injury to plaintiffs' membership.

We have carefully reviewed the contentions of able counsel. In our judgment, (1) this court has jurisdiction to grant injunctive relief; (2) plaintiffs have established an immediate and irreparable need for equitable intervention; (3) plaintiffs have no adequate remedy at law; (4) the instant dispute involves an arbitrable issue which must be determined in accordance with the grievance procedures of the collective-bargaining agreement; and (5) as a condition of equitable relief, plaintiffs must participate in an expedited grievance-arbitration proceeding, if and when initiated by the company, concerning the question which is the crux of this litigation, namely, the interpretation and effect of Section 19 of the agreement.

## III. *Discussion*

The narrow question here presented is whether the decision in *Buffalo Forge Co. v. United Steelworkers of America*, 428 U.S. 397, 96 S.Ct. 3141, 49 L.Ed.2d 1022 (1976), and the anti-injunction provisions of the Norris-LaGuardia Act,[9] must be construed so as to deprive this court of equitable jurisdiction to maintain the status quo and compel arbitration. In our judgment, the instant dispute constitutes an arbitrable issue as mandated by *Buffalo Forge*, and, therefore, this court possesses equitable power to enforce Section 301(a) of Labor Management Relations Act[10] as interpreted in *Boys Markets, Inc. v. Retail Clerks Union, Local 770*, 398 U.S. 235, 90 S.Ct. 1583, 26 L.Ed.2d 199 (1970).

■ We begin our analysis with the observation that the *Boys Markets* exception to the inhibitions of the Norris-LaGuardia Act is applicable to activities by an employer. *Hoh v. Pepsico, Inc.*, 491 F.2d 556 (2d Cir. 1974); *Communication Wkrs. of America v. Western Elec. Co., Inc.*, 430 F.Supp. 969 (S.D.N.Y.1977); *Technical, Office & Professional Workers Union v. Budd Co.*,

---

**8.** Defendant's Exhibit B.

**9.** 29 U.S.C. §§ 104 and 107.

**10.** 29 U.S.C. § 185(a).

**890**

345 F.Supp. 42 (E.D.Pa.1972). However, unless the dispute involves an arbitrable issue, this court is without jurisdiction to enter an injunction. *Buffalo Forge Co. v. United Steelworkers of America, supra; Latrobe Steel Co. v. United Steelworkers of America,* 545 F.2d 1336 (3d Cir. 1976).

In *Boys Markets, Inc. v. Retail Clerks Union, Local 770, supra,* the Supreme Court emphasized that Section 4 of the Norris-LaGuardia Act is still viable.

"Our holding in the present case is a narrow one. We do not undermine the vitality of the Norris-LaGuardia Act. We deal only with the situation in which a collective-bargaining contract contains a mandatory grievance adjustment or arbitration procedure." 398 U.S. at 253, 90 S.Ct. at 1594.

In our judgment, the holding in *Buffalo Forge* is consistent with the rationale of *Boys Markets.* Mr. Justice White indicated that, if the strike in *Buffalo Forge* had "been precipitated by a dispute between union and management that was subject to binding arbitration under the provision of the contract," the jurisdictional prerequisites would have been present. 428 U.S. at 405, 96 S.Ct. 3141, 3147. Since the Court concluded that the legality of a sympathy strike was not an arbitrable issue, the district court was without jurisdiction.

In the instant case, the court is confronted with what might be termed a "reverse *Boys Markets*" situation. In a typical wildcat strike, the employer adopts a position with which the union and the employees disagree. Instead of referring the dispute to arbitration as required by the collective-bargaining agreement, the employees institute a wildcat strike to bring economic pressure upon the employer. Under these circumstances, a district court is empowered to issue an injunction to preserve the integrity of the arbitral process. *Boys Markets,*

*Inc. v. Retail Clerks Union, Local 770,* 398 U.S. 235, 253, 90 S.Ct. 1583, 26 L.Ed.2d 199 (1970).

There is no logical distinction between the conduct of employees in a wildcat strike and defendant's conduct in the instant case. Fort Pitt alleges that it has been grieved by the union's refusal to provide an immediate commitment for repayment of the premiums and, as a result, plaintiffs' refusal constitutes a breach of the collective-bargaining agreement.[11] However, rather than file a grievance as required by the contract, Fort Pitt resorted to "self-help." This court has jurisdiction, under the *Boys Markets* rationale, to force the party initially aggrieved, the defendant-employer here, to submit its grievance to arbitration and enjoin the company's remedy pending resolution of that grievance by the arbitrator.[12] *See Avco Corporation v. Local 787, Auto Workers,* 459 F.2d 968, 972 (3d Cir. 1972).

We are also convinced the instant plaintiffs have established an immediate and irreparable injury which requires equitable intervention. If relief is denied, the hospital and insurance benefits of the union members will lapse. The policies afford protection to the employees and their families during a period of financial depression. It would be inequitable to require these persons to assume immediate payment of individual premiums without prior notice. Such a directive would be tantamount to a cancellation of the coverage. Moreover, a strong argument can be made that the motive for the threatened cancellation is an attempt to apply pressure upon the membership. Such an inference is plausible because defendant paid the identical premiums during a previous work-stoppage and then bargained to renew Section 19 in the collective-bargaining agreement of March 3, 1975. We are unimpressed with defend-

11. See Defendant's Exhibit B.

12. This court is not usurping the function of the arbitrator when it enjoins defendant's threatened conduct. In *Jacksonville Maritime Ass'n v. I.L.A.,* the Court stated:

"[t]he court's conclusion on this point speaks only to the jurisdictional prerequisites under Boys Markets. The final decision as to whether there was a 'strike' in violation of the contract is a matter for arbitration . . ." 571 F.2d 319, 324 (5th Cir. 1978).

ant's assertion that plaintiffs have refused to negotiate a new contract in good faith. Fort Pitt presented no evidence to support the contention and, more importantly, assuming that situation to exist, it is irrelevant in light of the plain language of Section 19.

We discern no reason to further belabor the facts. The record establishes the following: (1) the parties contractually are bound to arbitrate the dispute; (2) plaintiffs have a strong likelihood of prevailing on the merits; (3) defendant has threatened a breach of the contract; (4) the breach will cause irreparable harm to plaintiffs' members; and (5) plaintiffs will suffer more from the denial of relief than will defendant from its issuance. *See Boys Markets, Inc. v. Retail Clerks Union, Local 770, supra; Communications Wkrs. of America v. Western Elec. Co., Inc.,* 430 F.Supp. 969, 978 (S.D.N.Y.1977).

The final contention of Fort Pitt relates to the amount of the security upon which the issuance of the restraining order was conditioned. Defendant argues that the amount of the bond must be determined by the possible consequences of the merits of arbitration, and since the monthly premium payment is approximately $40,000, the court must consider the potential financial detriment to defendant. We disagree.

An injunction bond must be conditioned upon the possible wrongful issuance of a preliminary injunction, and not upon the possible outcome of the merits of arbitration. *See Lever Brothers Co. v. Intl. Chemical Workers Union,* 554 F.2d 115, 120 (4th Cir. 1976); *United States Steel Corp. v. United Mine Wkrs. of America,* 456 F.2d 483, 488 (3d Cir. 1972). Defendant is fully protected because the recovery of expenses by a party wrongfully enjoined under the Norris-LaGuardia Act is not limited to the amount of the security. *United States Steel Corp. v. Mine Wkrs. of America, supra* at 493. Moreover, if a change in circumstances develops in the future, Fort Pitt may petition the court for an increase of security.

This opinion shall constitute the findings of fact and conclusions of law of this court.

An appropriate order will be entered.