LODGE 802, INTERNATIONAL BROTH-
ERHOOD OF BOILERMAKERS, IRON
SHIP BUILDERS, BLACKSMITHS,
FORGERS AND HELPERS AFL–CIO

and

Marine Draftsman, Local Lodge 804,
International Brotherhood of Boiler-
makers, Iron Ship Builders, Black-
smiths, Forgers and Helpers, AFL–CIO,
Intervenor,

v.

SUN SHIP, INC.

Civ. A. No. 81–368.

United States District Court,
E. D. Pennsylvania.

March 18, 1981.

Joseph Lurie, Philadelphia, Pa., for Local
802.

Theodore M. Lieverman, Philadelphia,
Pa., for Local 804.

J. Anthony Messina, Pepper, Hamilton &
Scheetz, Philadelphia, Pa., for Sun Ship.

## 348

### OPINION

LUONGO, District Judge.

This case involves a labor dispute between defendant Sun Ship, Inc. and two unions representing workers in Sun's shipyard, over Sun's attempt to subcontract work allegedly subject to the collective bargaining agreements between the parties at the same time that it is laying off a substantial number of employees. Plaintiff, Lodge 802 of the International Brotherhood of Boilermakers, Iron Ship Builders, Blacksmiths, Forgers and Helpers, moved for a preliminary injunction ordering Sun to arbitrate the issue, and enjoining Sun from discontinuing operations or further subcontracting while the arbitration is pending. Lodge 804 of the same international moved to intervene, seeking similar relief for its members.

On February 17, 1981, I held a hearing on the motions at which representatives of the unions and the company testified. Thereafter the parties submitted requests for findings of fact and conclusions of law, and memoranda addressed to the legal issues. On the basis of the record developed, I make the following

### I. FINDINGS OF FACT

1. Plaintiff, Lodge 802, International Brotherhood of Boilermakers, Iron Ship Builders, Blacksmiths, Forgers and Helpers is an unincorporated association and a labor organization representing production and maintenance employees.

2. Intervenor, Lodge 804, International Brotherhood of Boilermakers, Iron Ship Builders, Blacksmiths, Forgers and Helpers is an unincorporated association and a labor organization representing coordinators, draftsmen, hourly designers and blueprint room employees.

3. Defendant, Sun Ship, Inc., is a Pennsylvania corporation engaged in the business of shipbuilding and repair and manufacturing of industrial products with its principal place of business at the Foot of Morton Avenue, Chester, Pennsylvania 19013.

4. Local 802 and Sun are parties to a collective bargaining agreement effective for the period beginning February 2, 1979 through January 8, 1982.

5. Local 804 and Sun are parties to a collective bargaining agreement effective for the period beginning February 9, 1979 through January 8, 1982.

6. On January 9, 1981, Sun announced its decision to terminate all new ship construction currently performed at its Chester, Pennsylvania, shipyard.

7. Pursuant to its decision, Sun has devised a plan to lay off within a year approximately 2400 of the 3200 employees currently represented by Local 802. It has likewise devised a plan to lay off within a year virtually all of the 160 employees represented by Local 804.

8. Since January 9, 1981, Sun has laid off indefinitely 386 employees represented by Local 802, and 9 employees represented by Local 804.

9. Sometime after January 9, 1981, Sun subcontracted with Bath Iron Works, Bath, Maine, for the construction of a sugar barge for California and Hawaii Sugar Company. Before subcontracting, the barge was to have been constructed in Sun's Chester shipyard, where work on the sugar barge would have been performed by members of Local 802.

10. Article IX, Paragraph 7 of the collective bargaining agreement between Local 802 and Sun provides that indefinite lay-offs must be predicated upon "reduction in the amount of available work."

11. Article XXVIII of the collective bargaining agreement between Local 802 and Sun provides that all disputes over the meaning, application, or interpretation of the agreement shall be submitted to arbitration.

12. Sometime shortly before announcing its decision to phase out its new ship construction business, Sun subcontracted with Dredge Technology, Inc., in Virginia, and F. K. & B. Co., in Sweden, for engineering services on a hull for the Waterman Steam-

ship Company. Without subcontracting, this engineering work on the hull would ordinarily have been performed at Sun's Chester shipyard by members of Local 804.

13. Article I, section 1 of the collective bargaining agreement between Local 804 and Sun provides that:

> Work normally and regularly performed by bargaining unit employees shall not be performed by non-bargaining unit personnel.

14. Article XVI of the collective bargaining agreement between Local 804 and Sun provides that any dispute over the meaning, application, or interpretation of the agreement shall be submitted to arbitration.

15. Both Local 802 and Local 804 filed grievances contending that by subcontracting work Sun has violated their respective collective bargaining agreements.

16. Sun agrees that the grievances are subject to arbitration as provided in the respective agreements, and further agrees to take steps necessary to expedite the arbitrations.

## II. DISCUSSION

Local 802 originally brought this action seeking an injunction ordering Sun to proceed to arbitration in accordance with the collective bargaining agreement, *Boys Markets v. Retail Clerks Local 770*, 398 U.S. 235, 90 S.Ct. 1583, 26 L.Ed.2d 199 (1970), and ordering Sun to maintain the *status quo* at the shipyard pending the issuance of a decision by the arbitrator. *Transit Union Division 1384 v. Greyhound Lines, Inc.*, 550 F.2d 1237 (9th Cir. 1977); *Lever Brothers v. Chemical Workers Union, Local 217*, 554 F.2d 115 (4th Cir. 1976). Sun has now agreed that it must arbitrate these issues, and therefore the only remaining issue is whether it should be enjoined from further subcontracting or lay-offs until after the arbitrator has ruled.

The parties disagree over the standard to be applied in determining whether an injunction preserving the *status quo* should issue. Sun contends that I must determine that there is a probability that the unions will prevail at arbitration. Local 804 argues that I need only find that the issues are arbitrable, and contends that any further consideration of the probability of success on the merits invades the province of the arbitrator. If the request before me were limited to an order directing Sun to proceed to arbitration, I agree that the unions would need only to show that the issues are arbitrable. Here, however, the request before me is for a much broader injunction, the issuance of which may in effect give the unions almost the same relief to which they would be entitled if they prevailed at arbitration, namely the temporary preservation of work at the shipyard. Under these circumstances, it is appropriate to give consideration to probability of success on the merits.

■ Accordingly, the traditional equitable test governing issuance of an injunction is applicable here:

(1) the moving party must demonstrate the probability of ultimate success on the merits of its claim;

(2) the moving party must demonstrate that it will suffer irreparable harm if an injunction does not issue;

(3) the harm to the moving party if the injunction does not issue must outweigh the harm to the opposing party if the injunction does issue; and

(4) there must be no adequate remedy at law.

*See Boys Market, supra*, 398 U.S. at 254, 90 S.Ct. at 1594. As the moving parties, Local 802 and Local 804 bear the burden of establishing that the injunction is warranted. *Sperry Rand Corp. v. Pentronix, Inc.*, 311 F.Supp. 910 (E.D.Pa.1970); *Midland-Ross Corp. v. Sunbeam Equipment Corp.*, 316 F.Supp. 171 (W.D.Pa.), *aff'd* 435 F.2d 159 (3d Cir. 1970).

■ As to the first criterion, the unions have not persuaded me that it is probable that they will succeed on the merits of their claims at arbitration. With respect to Local 802, the collective bargaining contract does not specifically prohibit the subcon-

tracting of work by the company. Moreover, Sun contends that a part of the agreement between the parties is a letter agreement dated January 15, 1979, under which Sun need only notify the union of any subcontracting it intends to do. Local 802 may well prevail on its contention that Sun's subcontracting violates the agreement's clause on lay-offs (*see* Finding 10) but its burden is to establish that it is *probable* that it will prevail, and it has not done so on this record. Although I express no opinion on the merits of Local 802's position, and wholly agree that its position is not frivolous, the most I can say is that it has presented a colorable claim for arbitration, on which I cannot predict with any certainty how an arbitrator would rule.

Local 804's position is similar. It may well prevail on its contention that the contract provision relating to non-union workers prohibits Sun from subcontracting in a case such as this. (*See* Finding 13). However, its position is not so clearly meritorious that I can conclude that it is probable that it will prevail at arbitration.

In short, Local 802 and Local 804 have failed to establish one of the prerequisites for the issuance of an injunction preserving the *status quo.*

■ The unions have also failed to persuade me that irreparable harm will result from refusal to grant an injunction. In a case such as this one, the crucial question is whether an arbitrator's award can restore the union members to the *"status quo ante." Greyhound Lines, supra,* 550 F.2d at 1239; *Lever Brothers, supra,* 554 F.2d at 122. If it cannot, issuance of an injunction is appropriate to prevent the arbitration process from becoming a "hollow formality." *Id.* 554 F.2d at 123.

In *Lever Brothers,* the company sought to move its plant from Maryland to Indiana. The union contended that this presented an arbitrable grievance, and sought an injunction preventing the move until the arbitrator ruled on whether the move was permissible. The Court of Appeals for the Fourth Circuit affirmed the district court's issuance of an injunction prohibiting the move, noting that once the plant had in fact moved, it would be a virtual impossibility for the union to secure its reopening at its original site.

The instant case is significantly different from *Lever Brothers.* Here, no serious argument can be made that Sun does not have the right ultimately to cease operating in the new ship building business. What is at issue, therefore, is far more limited than was the case in *Lever Brothers,* namely, whether Sun may expedite its departure from the new ship building business by subcontracting work it has already undertaken. In short, what is really in dispute is wages and benefits for a period of a few months. Quite plainly, the arbitrator can by an award of back pay, compensate employees wrongfully laid off. Similarly, he can make awards of fringe benefits, and adjust seniority and pension rights affected by the lay-offs. While conceding this, the unions raise two items which they maintain cannot be properly compensated for by an arbitrator's award: first, the psychological and emotional distress caused to an employee and his family because of the lay-off; and second, health care and life insurance benefits now paid for by Sun which the workers may lose if they cannot afford to assume the premiums themselves.

The unions' point about the emotional impact of the lay-off on its members and their families is well-taken. It is unquestionable that the anxiety caused by the lay-off cannot be erased by a *post-hoc* reinstatement or award. The problem with this argument is that it proves too much. In *every* instance where a worker is laid off there is certain to be this kind of impact, and for the courts to categorize it as irreparable harm would justify issuance of an injunction whenever the union could establish that a lay-off or dismissal was arbitrable. Therefore I disagree with Local 802 and Local 804 that courts can rely upon this type of impact as being sufficient to satisfy the legal requirement of irreparable harm.[1]

1. *But see Local 757 UAW v. Budd Co.,* 345 F.Supp. 42 (E.D.Pa.1972).

The unions' second point is more substantial. Although there is no evidence in the record, there is a substantial likelihood that at least some of the workers affected by the lay-offs will not be in a financial position to assume the cost of premiums for the insurance now paid for by Sun. Clearly these benefits can be restored if it is found that Sun has violated the collective bargaining agreement. Moreover, Sun concedes that if workers incur medical expenses during the period of the lay-offs, and the arbitrator decides that the lay-offs were improper, then the arbitrator has the power to award either the premiums paid by the employee for the duration of the lay-off, or any medical expenses incurred which would have been covered by Sun's health insurance plan had there not been an improper lay-off. In short, Sun is assuming the risk of substantial liability in the event that the arbitrator rules against it.

The unions cite *United Steel Workers of America v. Fort Pitt Steel Casting*, 598 F.2d 1273, 1280 (3d Cir. 1979), for the proposition that loss of company-provided medical insurance coverage during a strike suffices to constitute irreparable harm. First, I note that the court did not hold that in every case involving loss of health insurance benefits the district court must find that there is a threat of irreparable harm. It concluded that the district court in that case had not abused its discretion in making such a finding, and it is well-established that a district court has wide latitude in exercising its discretion on matters of injunctive relief. *U.S. Steel Corp. v. Fraternal Association of Steelhaulers*, 431 F.2d 1046 (3d Cir. 1970).

Second, in *Fort Pitt* there was a strong additional consideration which influenced the district court. The collective bargaining agreement there expressly provided that the company would continue paying insurance premiums while the workers were on strike, and the union sought an injunction maintaining the benefits while the company arbitrated its refusal to provide them. *See* 452 F.Supp. 886 (W.D.Pa.1978). The company had in effect already conceded during the collective bargaining process the importance of continued health benefits to the union, and for the district court to have denied the injunction would have given the company an advantage during the strike which it had previously bargained away. 452 F.Supp. at 890–91.

Finally, I note that the Court of Appeals' decision in *Fort Pitt* was predicated not on the possibility of financial loss to the employees, but on the assumption that the lack of health insurance would result in denial of "adequate medical care." 598 F.2d at 1280. Although it may well be, in our current system of health care, that it is not possible to secure medical treatment without health insurance, there is nothing in the record before me to substantiate such a position, and I do not feel that this is so indisputably true that I can take judicial notice of this as a fact.

None of the parties has properly addressed the third criterion for issuance of an injunction, the balancing of the harm caused if the injunction is issued against the harm caused if it is not. The unions made no attempt at the hearing to address the impact of the injunction upon Sun in their presentations. Sun in turn rested at the end of the unions' case. Counsel for Sun was admonished not to make reference during argument to the purported impact of the injunction upon Sun. Notwithstanding this admonition, Sun's proposed findings of fact and legal memoranda in part take the position that the injunction should be denied because the harm to Sun if an injunction issues is far greater than the harm to the unions if the injunction is denied.[2] Inasmuch as there is no evidence properly of record addressed to this issue, I have not considered it in determining whether the requested injunction should issue.

2. After Sun rested on the merits, it presented extensive evidence about the financial condition of the company relative to the amount of bond the unions should be required to post if an injunction were issued. Rule 65(c), F.R. Civ.P. Counsel was instructed that this evidence would only be considered as bearing upon the amount of security, and counsel's attempt to argue this evidence on the merits of the motion is improper.

Finally, the parties have not directly addressed whether there is an adequate remedy at law, but their arguments on irreparable harm have, in effect, covered the relevant considerations.

Having considered the appropriate criteria for issuance of a preliminary injunction, I conclude that Local 802 and Local 804 have failed to carry their burden of establishing the probability that they will prevail on the merits at arbitration, and have further failed to establish that irreparable harm will result to their members if an injunction does not issue. Accordingly, their motion for a preliminary injunction enjoining Sun from further lay-offs or subcontracting pending the outcome of arbitration will be denied.

### III.  CONCLUSIONS OF LAW

1.  Plaintiff Local 802 and Intervenor Local 804 are labor organizations within the meaning of sections 2(5) and 301 of the National Labor Relations Act, 29 U.S.C. §§ 152(5) and 185.

2.  Defendant Sun Ship, Inc. is an employer in an industry affecting commerce within the meaning of sections 2(2) and 301 of the National Labor Relations Act, 29 U.S.C. §§ 152(2) and 185.

3.  This Court has jurisdiction over the motions by Local 802 and 804 under section 301 of the National Labor Relations Act, 29 U.S.C. § 185.

4.  Local 802 and Local 804 have failed to establish the probability that they will prevail on the merits of their claims at arbitration.

5.  Local 802 and Local 804 have failed to establish that they will suffer irreparable injury if an injunction does not issue.

6.  Local 802 and Local 804 have failed to establish that they are entitled to a preliminary injunction enjoining Sun from further lay-offs or subcontracting pending the outcome of arbitration.