Robert M. SHULTZ, David Sommerville, Howard Olson, Robert D'Antonio and John Gagliordony, for themselves and all persons similarly situated, Plaintiffs,

v.

TELEDYNE, INCORPORATED; Teledyne Industries, Defendants.

Civ. A. No. 87-39.

United States District Court, W.D. Pennsylvania.

March 27, 1987.

William T. Payne, Frank J. Lucchino, Grogan Graffam McGinley Solomon & Lucchino, Pittsburgh, Pa., for plaintiffs.

Peter D. Frost, John G. Ferreira, Reed Smith Shaw & McClay, Pittsburgh, Pa., for defendants.

## OPINION

GERALD J. WEBER, District Judge.

This is an action alleging a Section 301 violation of the Labor-Management Relations Act, 1947 and ERISA violations which was brought by retirees against an employer who discontinued payment of their health insurance premiums during a strike by active employees. Plaintiff retirees have moved for preliminary injunction and a hearing has been held. Post-hearing submissions have been filed by the parties. Defendants, on their part, have moved to dismiss, and this motion has been fully briefed. Both motions are ready for our determination.

### PARTIES

The named plaintiffs are retired former employees of defendant-employer, Teledyne Vasco. Plaintiffs filed this action on their own behalf and for all persons similarly situated. Teledyne Vasco is a division of Teledyne Industries, a California corporation which is wholly-owned by Teledyne, Inc., a Delaware corporation. Teledyne, Inc. acts as the Plan Administrator for the Benefit Plan at issue in this action.

### FACTS

Upon the recent expiration of the collective bargaining agreement, defendant Teledyne Vasco notified retirees and surviving spouses that Teledyne Vasco would cease making contributions on their behalf to the medical insurance plan. The notice indicated that retirees would be required to pay the premium necessary to convert the policies to individual coverage before February 16, 1987 if their health coverage was to continue. Failure to convert would result in immediate loss of coverage after the aforesaid date. Plaintiffs immediately sued for injunctive relief and damages, claiming that the retirees' benefits were to continue throughout retirement, and that defendants had no right to terminate the

benefits when the active employee contract expired. Defendants argue that the Insurance Agreement provides explicitly that in the event of a strike, the defendant Teledyne Vasco will advance premiums for 30 days of coverage, subject to reimbursement by covered participants, and that Teledyne Vasco performed its duty according to the agreement.

## MOTION FOR PRELIMINARY INJUNCTION

Courts traditionally consider four factors in determining whether or not to grant injunctive relief:

1) Have plaintiffs shown a substantial probability of success on the merits of their claim?

2) Will plaintiffs suffer irreparable harm unless an injunction issues?

3) In the absence of an injunction, will the harm plaintiffs suffer exceed the harm an injunction may cause defendants?

4) Will injunctive relief comport with the public interest?

If the court believes that the answer to these questions is affirmative, injunctive relief should issue. *See, e.g., Mamula v. Satralloy, Inc.,* 578 F.Supp. 563 (S.D.Ohio 1984); *Musto v. American General Corp.,* 615 F.Supp. 1483, 1494 (M.D.Tenn.1985).

## PROBABILITY OF SUCCESS ON MERITS

■ Plaintiffs' claims rely on both Section 301 of the Labor-Management Relations Act, 29 U.S.C. § 185, and ERISA provisions, 29 U.S.C. §§ 1132(a)(1)(B), 1132(a)(3), and 1104(a)(1)(D). The ERISA claim is one in which the court must determine whether retirees' rights, which were not statutorily established, but were negotiated for under a collective bargaining agreement, are entitled to federal protection by reason of ERISA. Therefore regardless of which claim we examine first, we must begin with the collective bargaining agreement in order to ascertain the nature and scope of retirees' rights and whether defendants had a right to terminate retiree insurance benefits.[1]

■ The Insurance Agreement which provides certain life, accident, sickness and hospital insurance for active and retired employees under a Group Insurance Plan, was originally executed in February 1960 as part of the collective bargaining agreement between Vasco and the Union. The Agreement's provisions have been modified from time to time by collective bargaining, and it was only in 1974 that Vasco agreed for the first time to provide the group medical coverage *for retirees.* Prior to 1974, only active employees were covered. The language which provided medical care insurance for retirees is as follows:

Effective August 1, 1975 all past and future pensioners (except deferred vested) will be covered by a medical care program. The cost of this program will be paid by the company.

Specifically, those covered by the new retiree medical program include all pensioners (except deferred vested) who are not eligible for Medicare and their dependents, spouses who are not eligible for Medicare and their dependents, and individuals receiving Surviving Spouses benefits who are not eligible for Medicare and their dependents.

The Plan will cover the following medical expenses. (Specific benefits then described).

1. Defendants immediately argue that since the core of plaintiffs' claims depends on a determination of the intent and meaning of various provisions of collective bargaining agreements, the arbitration provisions therein apply, and the court should require the parties to arbitrate.

However, we believe that cases cited by defendants are distinguishable. This is an action by retirees who are not parties to the collective bargaining agreement and who do not have available to them the economic weapons of strikes and walkouts. Thus concerns with inhibition of negotiations and with economic warfare are eliminated. We believe that the usual "presumption of arbitrability" does not apply when retirees bring suit under ERISA. Rather, retiree benefits are permissive and not mandatory topics for collective bargaining. *See Allied Chemical v. Pittsburgh Plate Glass Co.,* 404 U.S. 157, 92 S.Ct. 383, 30 L.Ed.2d 341 (1971); *Anderson v. Alpha Portland Industries, Inc.,* 752 F.2d 1293, 1298 (8th Cir.1985).

*See* Agreement of November 1, 1974, Affidavit of Joseph Newtz; Exhibit A. Thus the retiree benefits in question were originally established with a single limitation expressed as to duration: the benefits would cease once the participant became eligible for medicare.

In 1977, the only provisions in the collective bargaining agreement which referred to the retiree medical insurance removed the durational requirement by extending coverage even to those eligible for Medicare. The wording is as follows:

Pensioner's and surviving spouse's insurance coverage will continue even though Medicare is applicable, but benefits provided by Medicare will be excluded from the coverage.

First Amended Complaint, Exh. B, p. 87, item 9.

In 1980, the only action the parties took with respect to retirees' medical coverage was to establish a new and separate optional "Major Medical" plan. This optional plan provided coverage at the retirees' expense for benefits not encompassed in the company-paid plan which the 1974 and 1977 agreements described. Affidavit of Joseph Newtz, Exh. 8, p. 86, item 12. Neither the 1980 nor the 1983 Agreements referred in any way to the company-paid retiree health insurance Plan established in 1974.

Defendants urge us to examine the wording of the 1960 Insurance Agreement in which benefits were provided only to active employees to find the durational limitation on which they rely in terminating retiree benefits. The pertinent language is as follows:

In the event of a strike, the insurance program, with the exception of sickness and accident benefits, will be continued for 30 days. The Company will advance the premiums for coverage during such 30 days, which premiums will be repaid by the *employees*. During such 30 days, the parties will discuss procedures and arrangements with respect to further continuation of insurance coverage and repayment of the advance. Keefe Aff. Exh. 1, Part II, p. 8, ¶ 4. (emphasis added).

Defendants also urge us to find that the parties intended to limit the retirees' benefits in the same manner as they limited active employees' benefits in the event of a strike, based on a draft letter of October 1, 1974 which is unsigned. The letter was addressed to the Union from the then Manager of Industrial Relations of Teledyne Vasco, and it indicated:

The Company will take action described below for pensioners who have retired prior to July 31, 1974.

Effective August 1, 1975, the Company will permit the above pensioners (excluding deferred vested pensioners) to participate in the group insurance program for pensioners and individuals receiving Surviving Spouse's benefits established by the insurance agreement effective October 1, 1974 *under the same terms and conditions applicable to employees covered by such Agreement.*

*See* Thomas A. Keefe Affidavit, Exh. 3. (emphasis added).

We find defendants' arguments insufficient to establish any ambiguity in what we believe to be a clearly worded provision for retiree medical insurance whose only durational limitation was removed in the 1977 collective bargaining agreement. We do not find in the original 1960 agreement any reference to retiree benefits. An unsigned draft of a letter, in the face of unambiguous written agreements do not provide a competent evidentiary basis for a finding of the parties' intent. Moreover, there is ample evidence that the parties specifically indicated durational limitations when they intended such limitations to apply, and that the company-paid retiree medical plan was considered and provided for separate from the active employees' insurance plan. Based on our analysis of the four corners of the agreements between the employer and the union, we conclude that the 1960 limitation on the duration of benefits in the event of a strike does not pertain to retiree benefits. We particularly find this to be the case in light of recent decisions which find an inference that retirees' benefits are extended for life unless specifically limited by the parties. *See Upholsterers v. Amer-*

*ican Pad and Textile Co.,* 372 F.2d 427 (6th Cir.1967); *USWA v. Midvale Heppenstall,* 94 CCH ¶ 13,528 (W.D.Pa.1981), *aff'd* 676 F.2d 689 (3d Cir.1982); *UAW v. Yard-Man, Inc.,* 716 F.2d 1476 (6th Cir.1983). Defendants have not rebutted this inference in the case at hand. Thus we find that plaintiffs have a substantial probability of succeeding on the merits of their claim.

## IRREPARABLE HARM

The termination of health insurance benefits, particularly to those on fixed incomes, has been found to present a sufficient threat of irreparable harm to warrant the issuance of an injunction. *See USWA v. Fort Pitt Steel Casting,* 598 F.2d 1273 (3d Cir.1979), *affirming* 452 F.Supp. 886 (W.D.Pa.1978); *UAW v. White Farm Equipment Co.,* 119 L.R.R.M. 2878 (Minn. Dis.Ct.1984) [Available on WESTLAW, DCT database]; *Mamula v. Satralloy, Inc.* 578 F.Supp. 563 (S.D.Ohio 1984). We have had testimony in this case indicating that retirees on fixed incomes will suffer financial hardship and in some cases will be unable to pay for individual health insurance coverage. Some individuals indicated that they would forego medical care for themselves and their families due to their inability to pay for either the insurance coverage or the direct cost of medical care. We believe that plaintiffs in this case have established that they will suffer a risk of irreparable harm.

## BALANCING THE HARM

Defendants have provided information and argument regarding the loss that they will suffer should the court issue injunctive relief requiring them to pay the cost of premiums. Basically, defendants indicate that, for the individual retiree the expenditure would be minimal, but to defendants the aggregate amount they would be required to pay would be both substantial and basically unrecoverable should they ultimately win this action, since recovery would only be possible by suing each individual retiree and surviving spouse.

We believe nonetheless that defendants deprivation is limited to that of money damages whereas plaintiffs would suffer both money damages and potential lack of sufficient medical care. Moreover, considering the limited income of plaintiffs, their money damages, in many instances, would be relatively more substantial than those which defendants face. In balancing the relative harm to the parties, we find that plaintiffs are in considerably greater jeopardy overall than defendants.

## PUBLIC INTEREST

We believe that the public interest is consistent with the preservation of retiree health insurance plans wherein former employers have contractually obligated themselves to provide ongoing health benefits *after* retirement in partial compensation for services performed prior to retirement.

## NORRIS–LaGUARDIA

Defendants argue that plaintiffs' request for a preliminary injunction must be denied because under Section 4(c) of the Norris-LaGuardia Act, this court lacks jurisdiction to issue injunctive relief in cases involving labor disputes. Defendant relies on *Viggiano v. Shenango China Division of Anchor Hocking Corp.,* 750 F.2d 276 (3d Cir. 1984).

Plaintiffs' opposing argument is twofold:

1) ERISA specifically provides for injunctive relief, indicating Congress' express intent. *Laborers Fringe Benefit Funds v. Northwest Concrete and Construction, Inc.,* 640 F.2d 1350 (6th Cir.1981). Accordingly the anti-injunction provisions of the Norris-LaGuardia Act do not apply to actions brought under Section 502 of ERISA. *See Mamula,* 578 F.Supp. at 576; *UAW v. White Farm, supra; Schuck v. Gilmore Steel,* 784 F.2d 947 (9th Cir.1986).

2) Alternatively, the Court's decision in *Boys Markets, Inc. v. Retail Clerks Union, Local 770,* 398 U.S. 235, 90 S.Ct. 1583, 26 L.Ed.2d 199 (1970), is an example of the court performing its job of accommodating and reconciling the older statutes, i.e. Norris-LaGuardia Act, with more recent statutes and the important policies which they represent. Since ERISA provides pro-

tection for employee welfare benefit plans, and Norris-LaGuardia sought to prevent federal courts from enjoining the legitimate exercise of the rights of American workers protected by the National Labor Relations Act, any fair and compatible reading of the two statutes would result in a finding that a dispute over an employer's termination of retirement benefits is "not the type of 'labor dispute' to which Norris-LaGuardia is directed." *See, e.g., Retail Clerks v. Alfred M. Lewis, Inc.*, 327 F.2d 442, 448 (9th Cir.1964).

■ We find plaintiffs' argument persuasive. *Viggiano* is factually distinguishable in that it involves active employees and a mandatory arbitration clause. *See DelGrosso v. Spang and Co.*, 769 F.2d 928 (3d Cir.1985). Moreover, the *Viggiano* court indicated that even if plaintiffs prevailed in arbitration, they could still proceed to litigate the merits of their ERISA claim before the court. We do believe that the injunctive relief sought under either the Section 301 claim or the ERISA claim on behalf of retirees whose benefits were terminated is not the type of injunction that the Norris-LaGuardia Act was intended to preclude. *See UAW v. White Farm Equipment Co., supra; International Union v. Cadillac Malleable*, 728 F.2d 807 (6th Cir.1984). Further we agree with the numerous other courts, cited by plaintiffs, who have found that the anti-injunction provisions of the Norris-LaGuardia Act do not apply to actions under Section 502 of ERISA.

## MOTIONS TO DISMISS

Defendants Teledyne Vasco and Teledyne, Inc. have filed motions to dismiss and/or strike raising the following issues:

1. Failure to exhaust grievance and arbitration procedures;
2. Failure to join the Union as an indispensible party;
3. Failure to allege a factual basis for a Section 301 claim against Teledyne, Inc.;
4. The requested relief for "emotional distress", "pain and suffering", and "exemplary damages" are not recoverable under either Section 301 of ERISA and should be stricken.

■ Plaintiffs' claim should not be dismissed unless it appears beyond doubt that plaintiffs can prove no set of facts that would entitle them to relief. *Conley v. Gibson*, 355 U.S. 41, 788 S.Ct. 99, 2 L.Ed.2d 80 (1957). Our discussion has established our belief that plaintiffs are likely to succeed on the merits of their claim, and that arbitration is not required under these facts. We further do not find the Union to be an indispensible party to this action. We believe that plaintiffs' allegations that Teledyne, Inc. is a fiduciary under the Benefit Plan and that Teledyne Vasco is its alter ego are sufficiently specific to hold Teledyne, Inc. in this action and to allow it to prepare a defense.

■ As for defendants' motion to strike certain damages, plaintiffs acknowledge that the Third Circuit's en banc decision in *Local 127, United Shoe Workers v. Brooks Shoe Manufacturing Co.*, 298 F.2d 277 (3d Cir.1962) would preclude recovery of punitive damages under Section 301 in this circuit, but plaintiffs argue that a more recent line of authority holding that punitive damages may be awarded in proper circumstances under Section 301 is the better view. *See Hechenberger v. Western Electric Co., Inc.*, 570 F.Supp., 820 (E.D. Mo.1983) *aff'd* 742 F.2d 453 (8th Cir.1984), *cert. denied*, 469 U.S. 1212, 105 S.Ct. 1182, 84 L.Ed.2d 330 (1985). We follow the Third Circuit in this matter. Also extracontractual damages, such as emotional distress, are generally not available in a Section 301 claim for breach of collective bargaining agreement. *See DeArroyo v. Sindicato De Trabajadores Packinghouse, AFL–CIO*, 425 F.2d 281 (1st Cir.) *cert. denied* 400 U.S. 877, 91 S.Ct. 121, 27 L.Ed.2d 115 (1970). We do not believe that the facts of this case, most favorably considered, constitute the exceptional circumstances under which such damages would be available. We also believe that the Supreme Court's reasoning in *Massachusetts Mutual Life Insurance Co. v. Russell*, 473 U.S. 137, 87 L.Ed.2d 96 (1985) applies to the case at

hand, precluding the individual participants of the plan from recovering extracontractual or punitive damages under ERISA section 502(a)(3), 29 U.S.C. § 1132(a)(3), despite plaintiffs' arguments to the contrary. For these reasons, we will grant defendants' motion to strike plaintiffs' request for punitive and extracontractual damages.

## MOTION FOR CLASS CERTIFICATION

■ Plaintiffs have moved to maintain class certification. The class to be certified would consist of all persons who are participants in the employee welfare benefit plan under which defendants are to provide insurance benefits for Teledyne's retirees who, prior to their retirement, had been represented by the United Steelworkers of America, AFL–CIO: CLC at Teledyne's Monaca plant. The proposed class consists of about 300 persons. Upon due consideration of plaintiffs' motion and brief, we find that plaintiffs have met the requirements of Fed.R.Civ.P. 23(b)(2) and we will therefore grant plaintiffs' motion for class certification by separate order.

## BOND

Defendants have requested a bond in the amount of $120,000 in the event that this court issues an injunction compelling them to contribute to the Plan. Defendants represent that since contributions are in excess of $20,000 per month and the dispute may continue for six months, this amount is reasonable. Plaintiffs argue that such an amount is unnecessary and that bond in the amount of $2,000 would be sufficient. We believe that a bond in the amount of $10,000 is sufficient at this time to protect defendants' interests.

An appropriate order will issue.

## ORDER

NOW this 27 day of March, 1987, in accordance with the accompanying opinion, IT IS ORDERED that:

1. Plaintiffs' motion for class certification is GRANTED;

2. Plaintiffs' motion for preliminary injunction is GRANTED, and defendants shall resume forthwith the payment of premiums for retiree medical insurance benefits which are at issue in this action;

3. Bond is set in the amount of $10,000;

4. Defendants' Motions to dismiss are DENIED;

5. Defendants' motions to strike plaintiffs' request for punitive and extracontractual damages are GRANTED.