INTERNATIONAL UNION, UNITED AUTOMOBILE, AEROSPACE AND AGRICULTURAL IMPLEMENT WORKERS OF AMERICA–UAW and UAW Local 155, Plaintiffs-Appellees,

v.

LaSALLE MACHINE TOOL, INC., Defendant-Appellant.

No. 82–1223.

United States Court of Appeals, Sixth Circuit.

Argued Aug. 30, 1982.

Decided Dec. 29, 1982.

David B. Gunsberg, Breskin & Gunsberg, Detroit, Mich., for defendant-appellant.

Bruce A. Miller, Duane F. Ice, Christopher F. Legghio, Miller, Cohen, Martens, Superman, Detroit, Mich., for plaintiffs-appellees.

Before LIVELY and MARTIN, Circuit Judges, and RUBIN,* District Judge.

LIVELY, Circuit Judge.

LaSalle Machine Tool, Inc., the employer, appeals from a preliminary injunction entered by the district court in an action brought pursuant to § 301 of the Labor Management Relations Act, 29 U.S.C. § 185, by the international and local union with which it had a collective bargaining agreement. We reverse for the reasons hereinafter set forth.

### I.

On January 18, 1982 the employer notified the union that it was considering a decision to sell off certain machinery and equipment. The union was requested to express its views and to provide the company with any information it felt was pertinent to the pending decision. The parties met shortly thereafter and discussed the matter. The union was advised by a letter dated February 1 that after careful consideration and further review the company had made a final decision to sell the machinery and equipment. In this letter the employer offered to bargain with the union over the impact of the decision on the workforce. In its reply dated February 5 the union stated its position as follows:

> It appears to us that the end result of your decision would be a permanent job loss for 30 to 35 employees. We feel your decision is in violation of the Seniority provisions of the Collective Bargaining Agreement and also violates the intent of the Letter of Understanding on Subcontracting included in the Agreement.
>
> The Union also looks on this action as a permanent erosion of the Bargaining Unit.

The union then accepted the offer to bargain over the impact of the decision while asserting the right to take the issue through grievance procedures outlined in the collective bargaining agreement if bargaining failed to achieve a satisfactory result.

In response to a request from the union the employer listed in a letter dated February 22 the name, classification and date of hire of each employee who would be terminated as a result of the sale of machinery and equipment. The letter of February 22 was "superseded" by one dated February 24 which showed, in addition to the information contained in the previous letter, the status of each employee to be terminated. Of the 31 affected employees, 19 were then laid off, one was scheduled for lay off on March 8, three were disabled and eight were working. Both letters contained the following language:

> It is the intention of La Salle Machine Tool to have machining performed by qualified companies at a competitive price. Accordingly, all companies capable of producing a quality job will be invited to bid on machining work that may be needed for La Salle Machine Tool, Inc. The list will include companies currently being used by La Salle Machine Tool,

* The Honorable Carl Rubin, Chief Judge, United States District Court for the Southern District of Ohio, sitting by designation.

divisions of Acme-Cleveland and other outside vendors. We do not know at this time which company will be the successful bidder. For that reason it is impossible for us to give you an accurate list of those companies that will furnish machining services to La Salle Machine Tool.

On March 9, the union advised the employer that further attempts to resolve their differences by bargaining appeared futile and that it intended to pursue the issue by grievance and arbitration. The grievance which the union then filed stated the details of the union's complaint as follows:

Company causing permanent job loss and erosion of the Bargaining Unit by their decision to sell certain machinery and equipment as outlined in their letter of February 1, 1982. Company's decision is a violation of the Collective Bargaining Agreement and the Letter of Understanding on Subcontracting under the same Agreement dated September 10, 1980.

The employer rejected the grievance and this action was commenced before the dispute reached arbitration.

## II.

### A.

The union filed its complaint in district court on March 15, 1982 describing the action thus:

1. This action arises out of the Company's decision to subcontract work, sell machinery and permanently terminate employees in violation of an agreement *not* to subcontract work. Plaintiffs seek a temporary restraining order and preliminary injunction to maintain the status quo, prevent irreparable injury and insure that arbitration is a meaningful remedy once the dispute is submitted to an arbitrator. (Emphasis in original).

The complaint set forth the genesis of the dispute and the union's reliance on the following provision of the collective bargaining agreement contained in a Letter of Understanding dated August 28, 1974:

The Company agrees that whenever there are employees laid off in any classification due to a lack of work, the Company will not subcontract work out of the classification; or if the Company is at the time subcontracting work in that classification, the Company will review the situation and endeavor to have such subcontracted work performed in its plant in order to provide work for laid off employees, providing such work can be returned from the subcontractor without impairing the contractual relationship with the subcontractor and without interfering with the continued efficient operation of the plant.

The union alleged in the complaint that the sale of the machinery and equipment was imminent and "[i]f the Company completes the sale of machinery, it will be incapable of fulfilling its obligation not to subcontract work." The complaint also charged that termination of the employees would result in irreparable harm and that they would suffer greater injury from a denial of injunctive relief than the employer would suffer if it were granted.

The relief sought in the complaint was a temporary restraining order to maintain the status quo pending arbitration, and "after a hearing" a preliminary injunction for the same purpose. The complaint contained the following statement in support of its prayer for injunctive relief:

13. If the Company signs a subcontract for the performance of laid off employees' work and a contract for the sale of machinery, arbitration will be futile. An arbitrator will not have jurisdiction to void the subcontract to return the jobs to the employees. Nor will he have the power to return title to the machinery to the Company. The arbitrator will be unable to restore the status quo ante and put the parties in the positions they held prior to the Company's violation of the Agreement. He will be presented with a *fait accompli,* and arbitration will be hollow formality. Arbitration, the legal remedy, will be inadequate.

## B.

In its answer the employer denied the allegations of paragraph 13 of the complaint, quoted above, except it admitted having made a decision to sell certain machinery. It specifically denied any decision to subcontract work, or that it had stated an intention to subcontract work. The employer also denied that the dispute with the union was arbitrable. This denial was based on "Management Rights" provisions of the collective bargaining agreement which specifically reserved to the employer the right to " . . . decide . . . the machinery and tool equipment, products manufactured, methods of manufacture, . . . process of manufacturing and assembly . . .". The employer asserted that under a Letter of Understanding of August 6, 1971 these provisions of the management rights clause of the contract were excluded from the grievance procedure.

While admitting that it would implement its decision to sell the machinery and equipment as soon as an acceptable bid was received the employer denied that any subcontracting of work was imminent. The employer also specifically denied the allegations of paragraph 13 of the complaint, quoted above, "as being untrue, and for the reason that the arbitrator has the power to provide an adequate remedy at law." As "affirmative and special defenses," the employer pled that the employees affected by sale of machinery have not suffered and will not suffer irreparable harm and that the harm it would suffer from issuance of an injunction would clearly outweigh any harm suffered by the plaintiffs from its denial.

## C.

Though the pleadings raised factual issues the district court did not conduct an evidentiary hearing. Instead, it received exhibits and heard oral arguments before ruling from the bench. The district court concluded that the union "has a very strong possibility of prevailing before an arbitrator that a violation of the no subcontracting article is about to occur." After noting that *Boys Markets, Inc. v. Retail Clerks Union*, 398 U.S. 235, 90 S.Ct. 1583, 26 L.Ed.2d 199 (1970), permits an injunction in cases involving labor disputes if certain criteria are met, the district court found that several courts of appeal have applied the *Boys Markets* rule to enjoin the conduct of an employer who "by self help is going to make a hollow formality out of an arbitration clause by conduct which is going to occur before arbitration can occur."

The district court found it undisputed that the employer had notified the union that it planned to sell the machinery and subcontract the work of the terminated employees. The district court noted that the dispute had been the subject of a grievance by the union and that the parties had agreed on two arbitrators. The district court's remaining findings were contained in the concluding paragraph of the bench opinion:

> So for those reasons and because the Court finds that irreparable damage will occur that cannot be remedied by the arbitrator, by the employer's own representations here, the Humpty Dumpty can never be put back together again once the machinery is gone and the employees are gone from their place of business. In the meantime while there after four months their medical benefits are lost they are unable to provide for the medical care of themselves and their families, they will be at 50 percent of their income immediately in relying on public funds and the subfund that is depleting. So irreparable damage to the employees would occur, this Court finds, and certainly irreparable damage to the Union would occur if it cannot enforce a clear bargain which it has striken with an employer which has been paid for by something given up by the members of this Union. It's irreparably harmed in its own integrity and its own value as an organization purportedly to represent employees.

The text of the preliminary injunction which the district court entered on the date of its oral opinion, March 17, is set forth in full.

Plaintiffs having filed their Verified Complaint and motion for a preliminary injunction; a hearing having been held with the parties presenting evidence and arguments and the Court being fully advised in the premises; and for the reasons stated on the record this date:

IT IS THEREFORE ORDERED:

a. That pending arbitration of the underlying grievance Defendant LaSalle Machine Tool, Inc., is hereby enjoined and restrained from entering into a subcontract for the performance of work of employees currently laid off and from selling or removing machinery necessary to perform the work of laid off employees or from otherwise effecting the planned subcontracting and sale of machinery and termination of employees pending arbitration.

b. That the parties forthwith and immediately submit the underlying grievance to arbitration.

c. That the union post bond as described by the Court.

### III.

#### A.

The issuance of federal court injunctions in labor cases is controlled by the Norris-LaGuardia Act, 29 U.S.C. §§ 101–115 (1976). The Act establishes procedural requirements for the issuance of injunctions which are made jurisdictional:

No court of the United States, as defined in this chapter, shall have jurisdiction to issue any restraining order or temporary or permanent injunction in a case involving or growing out of a labor dispute, except in a strict conformity with the provisions of this chapter; nor shall any such restraining order or temporary or permanent injunction be issued contrary to the public policy declared in this chapter.

29 U.S.C. § 101 (§ 1 of the Act). The jurisdictional nature of the procedural requirements is reiterated in § 7, 29 U.S.C. § 107, where the following requirements are set forth. Only after it has heard the testimony of witnesses in open court, with an opportunity for cross-examination, and after it has made findings of fact on issues enumerated in the statute does a federal court have jurisdiction to issue an injunction "in any case involving or growing out of a labor dispute." The findings of fact required to be made are to the effect that (a) unlawful acts have been threatened or committed and will be committed or continued unless restrained, (b) the party seeking the injunction will suffer substantial and irreparable injury, (c) as to each item of relief granted greater injury will be inflicted upon the party seeking the injunction by its denial than will be suffered by the defendant if relief is granted, and (d) the party seeking the injunction has no adequate remedy at law. A fifth requirement applies only to threatened damage to physical property and has no application here. The requirement that findings of fact be "made and filed by the court in the record of the case" prior to issuance of an injunction is repeated in § 9, 29 U.S.C. § 109, which concludes:

... and every restraining order or injunction granted in a case involving or growing out of a labor dispute shall include only a prohibition of such specific act or acts as may be expressly complained of in the bill of complaint or petition filed in such case and as shall be expressly included in said findings of fact made and filed by the court as provided in this chapter.

It is universally understood that the Norris-LaGuardia Act was adopted in 1932 to curtail the widespread practice of federal courts granting injunctions against strikes. This is clear from the language as well as the legislative history. However, the Supreme Court has recognized the need to accommodate the Norris-LaGuardia Act to changing conditions in the labor movement and to the provisions of subsequent legislation such as § 301 of the Labor Management Relations Act of 1947. See *Boys Markets, Inc. v. Retail Clerks Union*, 398 U.S. 235, 250–51, 90 S.Ct. 1583, 1592, 26 L.Ed.2d 199 (1970), *Heheman v. E.W. Scripps Co.*, 661 F.2d 1115, 1124 (6th Cir.1981), *cert. denied*, —— U.S. ——, 102 S.Ct. 2272, 73

L.Ed.2d 1286 (1982). Noting that even as enacted the prohibition in the Norris-LaGuardia Act against federal injunctions "was by no means absolute," 398 U.S. at 251, 90 S.Ct. at 1592, the Court in *Boys Markets* authorized an injunction against a strike in those circumstances where an employer had agreed to final and binding arbitration as the *quid pro quo* for an agreement by a union not to strike. In the absence of the availability of injunctive relief in such situations, the "important federal policy" favoring arbitration would be undermined. *Id.* 398 U.S. at 252, 90 S.Ct. at 1593.

Since *Boys Markets* a number of federal courts have held that Norris-LaGuardia applies generally to actions by unions seeking to enjoin threatened or ongoing acts of employers which it is claimed will render arbitration meaningless if not enjoined. *E.g., Detroit Newspaper Publishers Ass'n v. Detroit Typographical Union,* 471 F.2d 872 (6th Cir.1972); *Hoh v. Pepsico, Inc.,* 491 F.2d 556 (2d Cir.1974); *Amalgamated Transit Union v. Greyhound Lines,* 529 F.2d 1073 (9th Cir.), *vacated and remanded,* 429 U.S. 807, 97 S.Ct. 43, 50 L.Ed.2d 68 (1976), *decision on remand,* 550 F.2d 1237, *cert. denied,* 434 U.S. 837, 98 S.Ct. 127, 54 L.Ed.2d 99 (1977); *Drivers, Chauffeurs, etc. Union v. Akers Motor Lines,* 582 F.2d 1336 (4th Cir. 1978); *United Steel Workers of America v. Ft. Pitt Steel Casting,* 598 F.2d 1273 (3d Cir.1979); *Local Lodge No. 1226 v. Panoramic Corp.,* 668 F.2d 276 (7th Cir.1981).

In *Panoramic, supra,* the court expressed some doubt that all of the procedural requirements of § 7 of the Norris-LaGuardia Act apply to the issuance of an injunction in aid of arbitration. 668 F.2d at 290. It concluded that a full evidentiary hearing should ordinarily be required, but that in the case before it the district court's failure to hold such a hearing did not require reversal. This conclusion was based on a finding that the facts on which the injunction was based were "essentially undisputed, time was of the essence and the employer had been offered an opportunity for a hearing, but had declined it." *Id.* at 290–91.

■ There is no such uncertainty in this circuit as to whether a district court must observe the procedural requirements of § 7 before issuing an injunction in a case involving or growing out of a labor dispute. This court has long held that when the allegations of a complaint seeking an injunction are denied by the defendant, the defendant is entitled to a hearing on controverted facts as well as upon questions of law. *Detroit & Toledo Shore Line R. Co. v. Brotherhood of Locomotive Firemen and Engineers,* 357 F.2d 152 (6th Cir.1966); *Carpenters' District Council v. Cicci,* 261 F.2d 5 (6th Cir.1958). In a case decided after *Boys Markets* then Chief Judge Phillips wrote for this court in *Detroit Newspaper Publishers Ass'n, supra,* 471 F.2d at 876–77:

The fact that this case involves an injunction against the employer does not mean that the District Court was free to ignore the procedural mandates set forth in § 7 of the Norris-LaGuardia Act or to grant an injunction in the absence of irreparable harm. *See United States Steel Corp. v. United Mine Workers of America,* 456 F.2d 483 (3rd Cir.) cert. denied, 408 U.S. 923, 92 S.Ct. 2492, 33 L.Ed.2d 334 (1972); *Local 205 v. General Electric Co.,* 233 F.2d 85 (1st Cir.) aff'd, 353 U.S. 547, 77 S.Ct. 921, 1 L.Ed.2d 1028 (1956); *Clune v. Publishers Association of New York City,* 214 F.Supp. 520, 528 (S.D.N.Y.), aff'd, 314 F.2d 343 (2d Cir. 1963).

Judge Friendly, writing for the Second Circuit in *Hoh v. Pepsico, Inc., supra,* 491 F.2d at 560–61, made the same determination. These holdings are in accord with the Supreme Court's conclusions in *Lauf v. E.G. Shinner & Co.,* 303 U.S. 323, 58 S.Ct. 578, 82 L.Ed. 872 (1938).

■ There was a clear issue of fact in this case as to whether sale of the machinery as proposed by the employer would inevitably lead to subcontracting of work contrary to the Letter of Understanding of August 28, 1974. A hearing was required on this issue. Except as it might result in such subcontracting there was no claim that sale of machinery was contrary to the col-

lective bargaining agreement or was subject to grievance and arbitration, and unless such connection was established there would be no legal basis for enjoining the sale.

The finding of irreparable injury appears to be based on the district court's conclusion that "Humpty Dumpty can never be put back together again once the machinery is gone and the employees are gone from their place of business." There is no factual basis in the record for this conclusion. If an arbitrator should order the terminated employees reinstated the employer would be obliged to take them back. The finding that sale of the machinery would cause irreparable injury to the employees appears to rest on the allegation in paragraph 13 of the complaint that an arbitrator would have no power to return the machinery to the employer and thus could not restore the status quo if the sale were found to be a violation of the collective bargaining agreement. This allegation was specifically denied in the answer "as being untrue, and for the reason that the arbitrator has the power to provide an adequate remedy at law." The employer was entitled to an evidentiary hearing on this issue.

The district court also found irreparable injury to the union in its inability to enforce "a clear bargain" it had made with the employer. In *Detroit Newspaper Publishers Ass'n, supra,* 471 F.2d at 877, this court found no basis in the record for finding that the loss of confidence of the members in a union would be considered irreparable harm, and we can discern no basis for such a finding in the record before us.

Finally, the district court in the present case made no finding "that as to each item of relief granted greater injury will be inflicted upon complainants by the denial of relief than will be inflicted upon defendants by the granting of relief." 29 U.S.C. § 107(c). That is to say, the district court failed to balance the equities. Again, the employer put this matter directly in issue in its answer. The district court did not hear testimony on this factual dispute and made no finding as to the relative injury to the two parties from granting or denying injunctive relief. Such a finding may not be assumed from the fact that the court granted an injunction. Section 7 provides that a federal court has no jurisdiction to grant an injunction until *after* the specified findings have been made. Similarly, § 9 provides that an injunction shall not be granted "except on the basis of findings of fact made *and filed* ..." prior to the issuance of the injunction. (Emphasis added).

Thus we conclude that the injunction in this case was erroneously issued because the district court failed to comply with the jurisdictional requirements of § 7 of the Norris-LaGuardia Act.

### B.

■ Sometime after oral arguments were heard in this court the arbitrator handed down a decision and award. Since the injunction was issued "pending arbitration," it expired with the completion of the arbitration process. On this basis the union has filed a suggestion of mootness and a request that this court remand to the district court with directions to dismiss this litigation as moot. The employer has filed a response in opposition in which it contends there is still a live controversy between the parties. If the injunction was improperly granted the employer is entitled to recover under the indemnification bond any damages which it can show to have resulted from the wrongful issuance of the injunction. *Lever Bros. Co. v. Chemical Workers Local 217,* 554 F.2d 115, 120–21 (4th Cir.1976).

In *Liner v. Jafco, Inc.,* 375 U.S. 301, 305–06, 84 S.Ct. 391, 394, 11 L.Ed.2d 347 (1964), the Supreme Court held that completion of a building project pending review of the validity of a state court injunction against a strike by construction workers did not render the litigation moot. The appealing construction workers had a "substantial stake" in the outcome which was unaffected by completion of the project. This interest arose from the bond by which the party seeking the injunction had indemnified the strikers in damages if the injunction were

held to have been wrongfully sued out. The instant case is similar. The district court required an indemnification bond from the union. The final decision whether to order the bond discharged or to require further proceedings for determination of whether the employer has suffered damages by reason of entry of the injunction requires that we first determine whether the injunction was properly granted. Thus, because an issue remains for decision, the entire litigation has not been rendered moot.

■ After this opinion had been prepared, but before its release, the union filed a statement with this court to the effect that no bond was ever actually posted in this case. This does not alter our decision on mootness. The issuance of an injunction in a case involving or growing out of a labor dispute must be conditioned on an undertaking by the person seeking the injunction to make the person enjoined whole for any loss, expense or damage caused by the improvident or erroneous issuance of the injunction.[1] This requirement is made jurisdictional by § 1 of the Norris-LaGuardia Act, 29 U.S.C. § 101, *supra.* Having sought and obtained a preliminary injunction the union is obligated to pay the costs and damages incurred or suffered by the party found to have been wrongfully enjoined. The district court ordered "an undertaking" in the form of a bond. The fact that the bond which was ordered by the district court was not filed is immaterial.

■ There is an alternative ground for holding that the present appeal is not moot. We conclude that the dispute between the parties is clearly capable of repetition. If it were held to be moot by reason of an arbitrator's decision, the issue of the validity of the preliminary injunction would evade judicial review. When these circumstances

exist the litigation is not moot. *Southern Pacific Terminal Co. v. ICC,* 219 U.S. 498, 515, 31 S.Ct. 279, 283, 55 L.Ed. 310 (1911); *Nebraska Press Ass'n v. Stuart,* 427 U.S. 539, 546, 96 S.Ct. 2791, 2796, 49 L.Ed.2d 683 (1976).

The judgment of the district court is reversed, and the case is remanded for further proceedings consistent with this opinion.

---

1. § 7 of the Norris-LaGuardia Act, 29 U.S.C. § 107, contains the following language:

    No temporary restraining order or temporary injunction shall be issued except on condition that complainant shall first file an undertaking with adequate security in an amount to be fixed by the court sufficient to recompense those enjoined for any loss, expense, or damage caused by the improvident or erroneous issuance of such order or injunction, including all reasonable costs (together with a reasonable attorney's fee) and expense of defense against the order or against the granting of any injunctive relief sought in the same proceeding and subsequently denied by the court.