**OIL, CHEMICAL & ATOMIC WORKERS, LOCAL 6–10, AFL–CIO, Plaintiff,**

v.

**AMOCO OIL COMPANY, Defendant.**

Civ. No. A1–86–186.

United States District Court,
D. North Dakota,
Southwestern Division.

Oct. 27, 1986.

restraining order enjoining defendant Amoco Oil Company [the Company] from implementing a Drug Abuse Policy on November 1, 1986. On October 23, 1986, this court heard oral argument on the motion.

The Company has established a company-wide procedure for testing employees for drug and alcohol possession or ingestion. The procedure, pared to its bottom line, requires employees to agree that blood and urine samples obtained at mandatory annual physical examinations be tested for the presence of "controlled substances." A positive test would trigger a "re-test" which, if also positive, triggers procedures ranging from treatment to termination of employment. This feature of the plan does not provoke a strong response from the Union.

Another feature, whereby supervisory personnel could request urinalysis of someone suspected of "impairment," does provoke a strong response. The Union urges that procedural safeguards must be set up to protect employees from arbitrary or capricious actions of management, and from levels or limits, particularly on alcohol, which are in no way related to any degree of impairment.

Both sides agree that the health and safety of employees is a valid concern. Both sides agree that there is no known history of industrial accidents at the Mandan Refinery which can be directly attributed to alcohol or drug impairment. Both sides also appear to agree that the Company employees are not immune from the problems of chemical dependency or abuse, which occur in all occupational segments of society.

The nature of the present dispute can best be summarized by stating the position of management to be, "we are doing this for your own good, trust us to do it properly," while the Union's position is, "we would much rather negotiate into the policy and procedures a specific and objective set of guidelines so that both sides know and agree on the rules of the game."

John T. Schneider, Fargo, N.D., for plaintiff.

Jim Sullivan, Amoco Corp., Chicago, Ill., Donald J. Horton, Houston, Tex., Harold L. Anderson, Bismarck, N.D., for defendants.

*Memorandum and Order*

CONMY, Chief Judge.

Plaintiff Oil, Chemical and Atomic Workers, Local 6–10, AFL–CIO [the Union] has filed an ex parte motion for a temporary

The parties have negotiated all summer, with proposals and counter-proposals. They have been unable to agree, and management (apparently) called an "impasse," thereby triggering submission of the issue to arbitration. Arbitration is pending, but within a much narrower framework than the parameters of the dispute referred to above. It appears to the court that the issue presented to the arbitrator will only be whether or not the proposed testing system must be submitted to the joint labor-management health and safety committee for the committee's recommendations. The court assumes that the union contemplates that such committee "recommendations" will be the vehicle for incorporation of the desired safeguards into the system.

Management agrees that arbitration is appropriate under the collective bargaining agreement, but has announced its intention to put the testing system into effect on November 1, 1986, without waiting for resolution or completion of the arbitration process.

The Union asks that the court restrain management from starting the testing until the arbitration process has been completed.

Section 104, Title 29, United States Code, sets out the general anti-injunctive policy in labor/management disputes. The Supreme Court created a narrow exception to this general policy in *Boys Markets v. Retail Clerks Local 770*, 398 U.S. 235, 254, 90 S.Ct. 1583, 1594, 26 L.Ed.2d 199 (1970), where the Court indicated that injunctive relief was appropriate to enjoin activity that rendered the arbitration process meaningless. *Boys Markets* arose out of an employee strike in response to a labor dispute. Several courts have extended the narrow rule from the strike context of *Boys Market* to include any employer/employee behavior that evades a duty to arbitrate, or otherwise undermines the integrity of the arbitral process. *See, e.g., International Union, United Automobile, Aerospace & Agricultural Implement Workers of America, UAW and UAW Local 155 v. LaSalle Machine Tool, Inc.*, 696

F.2d 452 (6th Cir.1982); *Local Lodge No. 1266 v. Panoramic Corp.*, 668 F.2d 276 (7th Cir.1981); *United Steelworkers v. Fort Pitt Steel Casting*, 598 F.2d 1273 (3rd Cir.1979); *Lever Brothers Co. v. International Chemical Workers Union, Local 217*, 554 F.2d 115 (4th Cir.1976); *Hoh v. Pepsico*, 491 F.2d 556 (2d Cir.1974).

■ To obtain injunctive relief under these precedents, the moving party must establish certain threshold requirements:

1. the collective bargaining agreement must contain mandatory arbitration procedures; and

2. the action to be enjoined must be over an arbitrable grievance.

*Boys Markets*, 398 U.S. at 254, 90 S.Ct. at 1594. Once having established these threshold requirements, the moving party must satisfy the traditional test for injunctive relief.

The traditional test for imposing injunctive relief requires that the Union establish:

1. the probability of ultimate success on the merits of its claim;

2. that it will suffer irreparable harm if an injunction does not issue;

3. that its harm if the injunction does not issue outweighs the harm to the Company if the injunction does issue; and

4. there is no adequate remedy at law.

Both parties agree that this issue involves an arbitrable grievance, and that the Agreement provides for mandatory arbitration procedures. The matter is currently pending before an arbitrator, in accordance with those procedures. The issue before this court, then, is whether the Union can satisfy the traditional elements of the test.

A. Probability of success on the merits.

■ An analysis of Article XIX, "Health and Safety," leads this court to the conclusion that a Union-favorable decision by the arbitrator will not necessarily resolve the Union's complaints.

Section 6 provides:

At a mutually established time, subsequent to the receipt of research survey reports, the joint Committee will meet for the purpose of reviewing such reports and to determine whether corrective measures are necessary in light of the industrial consultant's findings and to determine the means of implementing such corrective measures.

This section appears to imply some authority on the part of the Committee to make changes in the Company's proposed Drug Abuse Policy. Section 8, however, provides:

The Joint Committee shall meet as often as necessary, but not less than once each month at a regularly scheduled time and place, for the purpose of considering, inspecting, investigating and reviewing health and safety conditions and practices. Union Committeemen shall have the right to investigate accidents in accordance with procedures established by the committee. The Joint Committee shall make *constructive recommendations* with respect thereto, including but not limited to the implementation of corrective measures to eliminate unhealthy and unsafe conditions and practices and to improve existing health and safety conditions and practices. ...

(emphasis added). It is far from clear that "winning on the merits" in the arbitration process will resolve the stated dispute, unless the parties are arbitrating something other than the right to make constructive recommendations.

### B. Irreparable Harm If the Injunction Does Not Issue.

A review of the submitted materials leads to the conclusion that the Union cannot meet this requirement. It has been company policy, and properly so, to not permit alcoholic beverages and controlled substances on company property. It has been, and continues to be, company (and Union) policy that no one should be working while under the influence of alcohol and/or a controlled substance. Current practices permit a supervisory employee to suspend an employee suspected of being "under the influence," and, if this suspension is challenged, the matter goes through the grievance process. The proposed procedure would add a measurement tool to the present entirely subjective process, much as the breathalyzer test does for driving offenses. The grievance process could be followed, as before, but with better evidence.

If the pending arbitration results in the invalidation of the testing process or the established levels of impairment, the employee could be "made whole" by payment of lost income and reinstatement. While stigma might attach, and this court is not wholly convinced by the Company's assurance of confidentiality, this is not sufficient to justify imposition of injunctive relief. *See Lodge 802, Int'l Broth. of Boilermakers, Iron Ship Builders, Blacksmiths, Forgers and Helpers AFL–CIO v. Sun Ship, Inc.,* 511 F.Supp. 347, 350–51 (E.D. Pa.1981) (anxiety caused by lay-off insufficient to warrant injunctive relief).

It cannot be argued that implementation of the testing procedures renders the arbitration process a nullity. If the Union is successful, some revised procedures may result and any disciplinary action imposed during the pendency of the proceedings halted or reversed. The arbitration process itself remains unaffected by the immediate implementation of the Drug Abuse Policy.

It should be noted that it is difficult to project any harm to Amoco if implementation of the policy is postponed. Both sides agree that no industrial accident has ever occurred at the Mandan Refinery that is directly attributable to chemical impairment. Since the plaintiff has failed to establish the first two elements of the test, however, this factor is not determinative.

It appears that the defendant has the power to implement its program, and to do so unilaterally while the arbitration process continues. The wisdom, or lack thereof, inherent in this action is not before the court. As the plaintiff cannot demonstrate the requisite elements, the injunctive relief must be denied.

Accordingly, it is the ORDER of this court

THAT PLAINTIFF'S MOTION FOR IN-JUNCTIVE RELIEF IS DENIED.