CENTRAL MISSOURI PAVING CO., INC., Plaintiff,

v.

UNITED MINE WORKERS OF AMERICA, DISTRICT 14, et al., Defendants.

UNITED MINE WORKERS OF AMERICA, DISTRICT 14, et al., Plaintiffs,

v.

CENTRAL MISSOURI PAVING CO., INC., Defendant.

Nos. N90–0069C, N90–0088C.

United States District Court, E.D. Missouri, N.D.

Oct. 26, 1990.

Shook, Hardy & Bacon, Robert J. Janowitz, Larry M. Schumaker, Kansas City, Mo., McMahon, Berger, Hanna, Linihan, Cody & McCarthy, Thomas O. McCarthy, St. Louis, Mo., for plaintiff.

Cornfield and Feldman, Daniel Koen, Chicago, Ill., Appleton & Kretmar, Gerald Kretmar, St. Louis, Mo., for defendants.

## MEMORANDUM

GUNN, District Judge.

These matters are before the Court on the motion of United Mine Workers of America, International Union; United Mine Workers of America, District 14; and United Mine Workers of America, Local 7688 (collectively "the Union") for a temporary restraining order. On October 15, 1990 this Court heard oral argument and received testimony from both parties in support of their respective positions on the motion. The Union seeks an injunction (1) barring Central Missouri Paving Co. ("the Company") from expending its funds or distributing its assets, other than in the ordinary course of business; (2) mandating the Company's compliance with the decision of the Arbitrator J. Mark Maclin in Arbitration Case No. 88–14–90–15 and with the decision of the Trustees of the UMWA Health and Retirement Funds in ROD Case No. 88–146; and (3) requiring the Company to return to arbitration to resolve the parties' dispute as to the amount of back pay due pursuant to the decision of Arbitrator Joseph S. Cannavo, Jr. in Arbitration Case No. 88–14–90–14.

The Company opposes this motion, with respect to the first request, contending that the Union has failed to demonstrate a threat of irreparable harm. The Company further asserts that injunctive relief is unavailable with respect to the second and third requests because the collective bargaining agreement and thus, the agreement to arbitrate, are void.

The facts pertinent to the resolution of this motion are as follows. Central Missouri Paving Company is a Missouri corporation which has operated for twenty years as a paving contractor and material hauler. The Company submitted a successful bid on the Huntsville Gob Reclamation Project and in conjunction with its performance on this project; the Company executed a copy of the United Mine Workers' of America

National Agreement ("National Agreement") on November 2, 1988.

The National Agreement provides for the resolution of disputes concerning its meaning and application pursuant to a four-step grievance process culminating, where necessary, in binding arbitration. *See* National Agreement, Article XXIII, Section (c). As an exception to this general dispute resolution procedure, the Agreement provides that disputes concerning the "Employer benefit plan" established by the National Agreement shall be resolved by the Trustees of the UMWA Health and Retirement Funds (Trustees). *See* National Agreement, Article XX, Section (c)(3).

On April 28, 1989 the Company filed an unfair labor practice charge with the National Labor Relations Board (NLRB) seeking recission of the National Agreement on the basis that the Union had not represented a majority of the Company's workers on the date that the National Agreement was executed. On May 2, 1989 the Union filed a Request for Resolution of Dispute (ROD) with the Trustees claiming that the health insurance provided by the Company did not meet the standards set forth in the National Agreement. On June 7, 1989 the NLRB ruled in favor of the Company on the majority representation claim and issued a complaint against the Union. At this juncture, the Union and the Company entered into settlement negotiations.

The negotiations focused on two elements of the National Agreement: the Company's participation in the UMWA 1950 Benefit Plan and Trust (1950 Trust) and the health insurance standards specified by the National Agreement. The Company sought to satisfy its obligation to provide health insurance by continuing its existing policy rather than obtaining the more expensive health insurance policy mandated by the National Agreement. In addition, the Company sought a waiver of its obligation to contribute to, and its contractual withdrawal liability under, the 1950 Trust.

On June 12, 1989 the parties reached an apparent settlement of their dispute. Pursuant to a Memorandum of Understanding signed by Wencil Eads, the Company's president, and Lyle McGowan, on behalf of the Union, the Union agreed to waive application of the 1950 Trust to the Company. In a separate document the Company agreed to withdraw its NLRB charge and recognized the Union as the bargaining agent for its employees at the Huntsville Gob Reclamation site.

The Company contends that the parties also entered into an oral agreement to allow the Company to continue its existing health insurance policy rather than the more comprehensive policy required by the Agreement. The Union denies that such an agreement exists and asserts that the Company agreed on June 12 to honor the standards set forth in the National Agreement. The Company maintains that the Union representative requested that this portion of the settlement not be reduced to writing because he did not want it revealed to officials of the International Union. In addition, the Union feared that a written agreement could prove embarrassing if it fell into the hands of other employers who were signatories to the National Agreement.

In support of its position the Company offered the following evidence. Sharon Hunt, Wencil Eads' secretary and the Company's office manager, testified that she prepared, at Lyle McGowan's behest, a letter to Richard Trumpka, president of the International Union, which reflected the parties' agreement concerning the continuation of the existing health insurance policies. *See* Company Exhibit D. Hunt further testified that McGowan refused to deliver the letter because it mentioned the health insurance issue. Thereafter, Hunt prepared a second letter in which she stated only that the Union would waive the application of the 1950 Trust to the Company in exchange for withdrawal of the NLRB complaint. *See* Union Exhibit 1.

On June 13, 1989 Robert Janowitz, counsel for the Company, wrote a letter to Lyle McGowan noting that he had received a copy of the June 12, 1989 "Memorandum of Understating" [sic] and confirming that the Union and the Company "also agreed ...

that the Company's existing health and medical insurance policy [would] be continued rather than the health and medical insurance policies set forth in the National Agreement." *See* Company Exhibit E. Shortly after the June 12, 1989 settlement, the Union withdrew the ROD filed on May 2, 1989 which challenged the adequacy of the Company's health insurance benefits. On January 4, 1990, the Union filed grievances alleging that the Company failed to provide its employees a paid, thirty-minute uninterrupted lunch period and failed to make restitution to employees denied work on load production days. On February 22, 1990 the Union reactivated the dispute resolution process on the health insurance issue. The Union contends that it took this action on the basis of employee complaints about substandard health insurance. On March 8, 1990 the Company received notification of the Union's action on the health insurance issue. On March 16, 1990 a hearing on the dispute concerning load production days was convened before Arbitrator Joseph S. Cannavo, Jr. (Cannavo arbitration). By letter dated March 23, 1990 the Union notified the Company that it had never agreed to a waiver of the health insurance provisions of the National Agreement. The Company contends that this was the first time that it learned of the Union's disavowal of the alleged oral agreement concerning health insurance. The Company participated in the Cannavo arbitration without challenging the arbitrator's jurisdiction but asserts that this letter prompted it to seek a delay in the entry of the arbitrator's decision pending the outcome of its challenge to the existence of an agreement.

Subsequently the Company participated in the contractual dispute resolution procedures with respect to two additional grievances. In each proceeding the Company challenged the validity of the Agreement on the basis of fraudulent inducement. In the first of these proceedings, the Maclin Arbitration, the arbitrator sustained the Union's grievances concerning the length of the workday and the provision of a thirty minute lunch period. The arbitrator ordered the Company to make payments to the affected employees but, to date, the Company has not complied with this Order. In the second proceeding, the Trustees sustained the Union's complaint and found that the Company had failed to provide health insurance benefits consistent with the standards set forth in the National Agreement. The Trustees ordered the Company to provide health insurance benefits comporting with the standards set forth in the National Agreement.

■ The parties agree that the Union's request for relief is properly characterized as an injunction in-aid-of arbitration. In *Boys Markets v. Retail Clerks Local 770*, 398 U.S. 235, 254, 90 S.Ct. 1583, 1594, 26 L.Ed.2d 199 (1970), the Supreme Court created a narrow exception to the general prohibition on the issuance of injunctions in labor disputes and stated that injunctive relief was appropriate to enjoin activity which renders the arbitral process meaningless. In order to obtain such injunctive relief, the moving party must demonstrate the existence of an agreement to arbitrate the particular grievance or dispute which is the subject of the injunction. *See Buffalo Forge v. USWA*, 428 U.S. 397, 406, 96 S.Ct. 3141, 3147, 49 L.Ed.2d 1022, 1030 (1976); *Boys Markets*, 398 U.S. at 254, 90 S.Ct. at 1594; *International Union United Automobile, Aerospace & Agricultural Implement Workers of America, UAW and UAW Local 155 v. LaSalle Machine Tool, Inc.*, 696 F.2d 452 (6th Cir.1982); *Oil, Chemical & Atomic Workers v. Amoco Oil Co.*, 653 F.Supp. 300, 302 (D.N.D.1986).

In addition to establishing this threshold requirement, the moving party must also satisfy the traditional criteria for the issuance of injunctive relief:

1. a threat of irreparable harm;

2. substantial likelihood of success on the merits;

3. a balance of equities favoring the moving party;

4. the absence of adequace remedy at law.

*Boys Markets*, 398 U.S. at 254, 90 S.Ct. at 1594; *Oil, Chemical & Atomic Workers v. Amoco Oil Co.*, 653 F.Supp. at 302; *see*

also *Dataphase Sys., Inc. v. C L Sys., Inc.,* 640 F.2d 109, 113 (8th Cir.1981).

The National Agreement contains an arbitration clause which provides that disputes concerning its application and meaning shall be subject to binding arbitration. In addition, the National Agreement provides that disputes concerning the level of employee benefits available under the Agreement shall be submitted to the Trustees. Relying on these provisions, the Union contends that the matters here in dispute are subject to arbitration.

▮ The Company asserts that the Union cannot demonstrate the existence of an enforceable agreement to arbitrate because the entire agreement between the parties, including the arbitration clause, is void. Specifically, the Company asserts that the arbitration provisions of the National Agreement are unenforceable because the Union fraudulently induced the Company to enter into the contract containing those clauses. In the alternative the Company contends that the June 12, 1989 settlement agreement is a nullity because the parties' disagreement concerning the existence of the oral portion of the agreement indicates that there was no meeting of the minds.

The Company's contentions concern the validity of the entire contract rather than the arbitration provisions. *See Minn. Odd Fellows Home Found. v. Engler & Budd Co.,* 630 F.Supp. 797, 799 (D.Minn.1986). As a matter of first impression, they are, therefore, issues for the arbitrator's consideration and not for the Court. *See Prima Paint Corp. v. Flood & Conklin Mfg. Co.,* 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967) (fraud in the inducement of the contract is a matter for the arbitrator); *Moses H. Cone Hospital v. Mercury Constr. Corp.,* 460 U.S. 1, 24, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983) (allegations of fraud in the inducement of the entire contract as opposed to the arbitration clause itself are for the arbitrator); *Slomkowski v. Craig–Hallum, Inc.,* 644 F.Supp. 132, 134 (D.Minn.1986); *Minn. Odd Fellows Home Found. v. Engler & Budd Co.,* 630 F.Supp. 797, 799 (D.Minn.1986). *See also Nordin*

*v. Nutri/System, Inc.,* 897 F.2d 339, 344 (8th Cir.1990).

▮ The Company does not allege fraudulent inducement with respect to the arbitration provisions nor does it contend that the disputes which were submitted to the arbitrators and the Trustees are not arbitrable grievances within the meaning of the National Agreement. Therefore, the Court concludes that the Union has, for the purposes of this motion, demonstrated the existence of an enforceable agreement to arbitrate the disputes which are the subject of the Union's request for injunctive relief. The Court notes, however, that this does not amount to an ultimate determination that the entire agreement is enforceable. That determination must be reserved until a hearing of the case on the merits.

▮ In order to obtain the relief sought, the Union must also demonstrate a threat of irreparable harm. The Union contends that such a threat exists because the Company plans to dissolve and sell off its assets upon termination of operations at the Huntsville Gob Reclamation Site. The Union fears that it will be unable to collect the funds owed pursuant to the arbitrators' and Trustees' awards if the Company dissolves or dissipates its assets. The Company disputes this contention and in support thereof offered the testimony of Sharon Hunt, its office manager. Ms. Hunt testified that the Company has no plans to discontinue operations or to dissipate its assets. She indicated that the Company was considering bidding on the second phase of the reclamation project and entering into a "cold mix" project which would employ the same number of persons that were employed at the Gob site. In addition, Ms. Hunt testified that the Company presently has sufficient assets to cover the liabilities arising from the arbitrators' and Trustees' awards.

Upon consideration of the evidence presented, the Court concludes that the Union has failed to demonstrate a threat of irreparable harm arising from the Company's alleged plans for dissolution. The Union's contention that such a threat exists amounts to no more than speculation and is

unsupported by any credible evidence that a threat of imminent and irreparable harm exists.

In the cases cited by the Union in support of its request, the labor organizations presented specific and concrete evidence that the employer either had consummated or was about to consummate a sale of assets. No such evidence was adduced here. Moreover, the denial of the Union's request will not frustrate the arbitral process because this dispute involves two completed and a third essentially completed arbitration award. There is no indication that the Union cannot be made whole by means of damages if it succeeds in enforcing the arbitrators' awards and the Trustees' decision. *See Local Lodge No. 1266, International Association of Machinists & Aerospace Workers, AFL–CIO v. Panoramic Corp.,* 668 F.2d 276, 286 n. 13 (7th Cir.1981).

The Union also asserts that its employees will suffer irreparable harm as a result of the denial of health insurance benefits. The Court concludes that this contention is without merit. The Company has no present obligation to provide health insurance benefits to the Union's employees because the Huntsville Gob Reclamation Project has been completed. This is not, therefore, a case in which the employees are threatened by termination of existing health insurance benefits or forfeiture of medical care. Only the Company's past failure to provide coverage which met the requirements of the National Agreement is at issue. The Union apparently contends that the harm arising from this alleged failure is irreparable because certain employees have incurred debts for medical bills as a result of the Company's substandard health insurance coverage. *See* Union Exhibit J. The Court concludes that this harm is fully compensable through the provision of money damages. Accordingly, the Union cannot demonstrate a threat of irreparable harm arising from this source.

In the absence of a showing of irreparable harm the Union cannot obtain the injunctive relief it seeks and its motion will therefore be denied.

■ The Union also seeks an order compelling interim enforcement of Arbitrator Maclin's award and the Trustees' determination concerning health insurance benefits. The Company contends that this request should be denied because it is at once moot and premature. The Company argues that a request for prospective enforcement of these orders was mooted by the termination of the coal reclamation project in September 1990. In addition, the Company asserts that a request for retrospective enforcement is a plea for final judgment on the merits.

The Court agrees with these contentions. The termination of the coal reclamation project precludes any claim that the Union may have for prospective enforcement because the Company's obligations under the National Agreement persist only for the duration of the project. Thus, retrospective enforcement is the only type of relief still available to the Union. If the Court were to grant such relief at this juncture, the Union would obtain the ultimate relief it seeks and there would be no basis for proceeding further on this claim. In addition, the Court notes that the complaint filed by the Union in Cause No. N90–88C does not contain a request for enforcement of the award in the Maclin Arbitration. Given the parties' stipulation at the hearing before this Court that the proceeding was not a hearing on the merits, the Court concludes that it would be improper to grant such relief at this time. Accordingly, this portion of the Union's request for injunctive relief also will be denied.

■ The Company has refused to return to the arbitrator to resolve this dispute and instead filed suit in this Court pursuant to § 301 of the Labor Management and Relations Act, 29 U.S.C. § 185 challenging the enforceability of the Agreement. The Union contends that this challenge is premature because the arbitrator's decision is not yet final. The Court agrees with this contention. In this case, as in the cases cited by the Union in support of its position, the arbitrator explicitly retained jurisdiction and postponed determination of a remedy until a later date. *See, e.g., Union Switch*

& Signal v. Local 610, 900 F.2d 608, 611 (3d Cir.1990). See also Exhibit 1 at p. 17 appended to Motion to Dismiss Plaintiff's First Amended Complaint. Inasmuch as Arbitrator Cannavo's decision is not final, the Court agrees with the Union's assertion that review of that decision at this time would frustrate the efficient operation of the arbitral process. See Union Switch & Signal v. Local 610, 900 F.2d at 611. For this reason, the Court will dismiss the Company's petition to vacate Arbitrator Cannavo's Award without prejudice to refiling at such time as that arbitration award is final. See Local 550 v. Wells Exterior Trim, 828 F.2d 1373 (9th Cir.1987).

Having thoroughly reviewed the remaining arguments raised in the Union's motion to dismiss the Company's petition to vacate the Maclin Arbitration and the Trustees' decision, the Court concludes that this motion to dismiss should otherwise be denied. The Court is satisfied that the Company's allegations of fraud are sufficiently specific to meet the requirements of Fed.R.Civ.P. 9(b).

■ In addition, the Court concludes that it has authority under § 301 of the LMRA to entertain the Company's petition to vacate the Maclin arbitration award and the Trustees' determination. Although the Eighth Circuit has not resolved the question of the existence of jurisdiction over such claims under § 301, the majority of the Circuit Courts of Appeals which have addressed the issue have concluded that such claims are cognizable under § 301. See IBEW, Local 481 v. Sign–Craft, Inc., 864 F.2d 499, 502 (7th Cir.1988); Mack Trucks, Inc. v. International Union, United Auto. Workers, 856 F.2d 579, 590 (3d Cir.1988); Rozay's Transfer v. Local Freight Drivers, Local 208, Int'l Bd. of Teamsters, 850 F.2d 1321, 1326 (9th Cir. 1988); McNally Pittsburg, Inc. v. International Ass'n of Bridge Workers, 812 F.2d 615, 618–19 (10th Cir.1987); Board of Trustees v. Universal Enters, Inc., 751 F.2d 1177, 1184 (11th Cir.1985); United Steelworkers v. Rome Indus., Inc., 437 F.2d 881, 882 (5th Cir.1970). This Court finds the reasoning announced in those cases persuasive and will follow it here.

### ORDER

Pursuant to the memorandum filed on this date herein,

IT IS HEREBY ORDERED that the motion of United Mine Workers of America, International Union; United Mine Workers of America, District 14; and United Mine Workers of America, Local 7688 (Union) for a temporary restraining order shall be and it is denied.

IT IS FURTHER ORDERED that the Union's motion to dismiss the First Amended Complaint of Central Missouri Paving Co., Inc. in Cause No. N90–69 shall be and it is granted in part and denied in part. Accordingly,

IT IS FURTHER ORDERED that Central Missouri Paving Co., Inc.'s petition to vacate the award of Arbitrator Joseph S. Cannavo, Jr. in Arbitration Case No. 88–14–90–14 shall be and it is dismissed without prejudice to refiling at such time as the award is final.

Pursuant to the stipulation of the parties,

IT IS FURTHER ORDERED that these matters shall be and they are consolidated. Hereafter all pleadings filed in these causes shall bear both cause numbers and shall be deposited in the file bearing Cause No. N90–0069C.